**F. Marilyn ENGLAND, Plaintiff–Appellant,**

v.

**Jack KEMP, Secretary of the Department of Housing and Urban Development, Defendant–Appellee.**

No. 91–8226.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1992.

Robert H. Stroup, Stroup & Coleman, Atlanta, Ga., for plaintiff-appellant.

Daniel A. Caldwell, Asst. U.S. Atty., Dept. of Justice, Atlanta, Ga., for defendant-appellee.

Before JOHNSON *, CLARK and PECK **, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

## INTRODUCTION

Plaintiff–Appellant England is a female employee of the Department of Housing and Urban Development (HUD) in Greensboro, North Carolina. She currently occupies the position of Loan Specialist. A class of female employees of HUD, including England, brought an action against HUD alleging Title VII employment discrimination. The action resulted in a Consent Order (Order), dated September 11,

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1980. The Order obligated HUD to implement procedures that would uncover and rectify discrimination in employment opportunities regarding the hiring and promotion of female employees in the southeastern United States. The District Court for the Northern District of Georgia, Charles A. Moye, Jr., J., retained jurisdiction to enforce the terms of the Order and four years later dismissed with prejudice those claims that arose prior to its entry.

### THE CONSENT ORDER

The Consent Order obligated HUD to initiate two separate studies of "career ladder" promotions in order to determine the reasons why female employees were in positions at lower levels than their male counterparts and report its methodology to the court and the parties. The first study would commence within thirty days of the entry of the Consent Order; the second study would be conducted thirty months after the completion of the initial review. Paragraph Eighteen of the Order provided as follows:

> HUD agrees to perform an inquiry into the reasons for any grade disparities identified in accordance with Paragraph 17. Specifically, HUD will perform such reviews and inquiries as are necessary to determine whether any differences in grade between males and females at or below the "maximum grade of a recognized career ladder" are properly based on applicable classification standards or time-in-grade requirements.

HUD conducted the first study on the basis of a personnel inventory dated October 11, 1980, and reported its efforts to the court and class counsel in 1981. Similarly, HUD conducted the second study on the basis of a November 4, 1983 personnel inventory. HUD submitted its final report to the court and class counsel in 1984.

### REMEDIES

In the event that HUD discriminated against an individual, the Order provided for the following remedial measures:

> 19. (a) HUD agrees to make a good faith effort ... to eliminate any such disparities and ensure that qualified female employees attain the "maximum grade of a recognized career ladder" in their positions.
>
> (b) In those cases wherein the study mandated by Paragraphs 17 and 18 reveals that no legitimate, nondiscriminatory reasons exist for the allocation of grades to positions occupied by females at lower levels than the grades allocated to positions occupied by males at or below the "maximum grade of a recognized career ladder," and the classification review conducted in accordance with Paragraph 21 herein does not reveal that the comparable positions occupied by males are overgraded, HUD will provide for the upgrading of the female position within 30 days of the completion of the review contemplated by Paragraphs 17, 18, and 21 herein.
>
> . . . .
>
> 20. In those cases where an apparent disparity in grade at or below the "maximum grade of a recognized career ladder" as defined herein between males and females is attributed to the assignment of work based on a perceived greater capability on the part of the male employee(s), the affected female employee(s) and the appropriate supervisor shall be counseled by appropriate HUD officials with the objective of developing a plan for the improvement of skills and qualifications and the eventual upgrading of the position occupied by the female. If, notwithstanding such effort, a female employee continues to be unable to demonstrate the necessary capability at the full "maximum grade of a recognized career ladder," such conclusion shall be fully documented.
>
> In those cases where the inquiry into an apparent grade disparity indicates that the grade of the male(s) in the position is overgraded, then appropriate classification review and action shall be undertaken, it being specifically understood that the purpose of the foregoing provisions is not necessarily the upgrading of female employees, but the removal of

grade disparities not based on legitimate, nondiscriminatory reasons.

## HUD'S REPORTS

In its reports, HUD described its methodology in detail. The first six steps of the study were as follows: 1) identification of positions to be studied; 2) identification of employees to be studied; 3) initial screening; 4) requests for explanation of discrepancies; 5) follow-up for explanations based on reduction in force; and 6) follow-up for explanations based on workload. Essentially, HUD reported that it identified women who were working in an office where grade disparities existed or were working at the same level after having become eligible for a promotion. After identifying these women, HUD would examine the putative reason for the discrepancies or the failure to promote. Both of HUD's reports contained the following provision:

> Where lack of workload to support an additional employee at a higher grade was given as the reason for the woman's lower grade, the office head was asked whether a man had been placed in the higher grade since the time at which a woman in that position became eligible for promotion to that grade.

## APPELLANT MARILYN ENGLAND

England has been a Loan Specialist at a GS–11 level since July 30, 1978. On February 8, 1981, she met all the objective requirements for promotion to a GS–12 position but has not yet been promoted. In the second study, England was identified as a woman who had not been promoted after having become eligible for promotion. The reason cited for the failure to promote her was lack of workload to justify a promotion. Despite the fact that workload was offered as a justification, no one asked the Greensboro office head whether a man had been promoted since England became eligible for promotion.

If an inquiry had been made, the office head would have revealed that Kim Hens-

ley, a male employee working at the same level as England, was promoted to a GS–12 position on October 12, 1981. In February of 1982, Hensley left his position at HUD, and no other employee in that department has been promoted since that time. Because Hensley's promotion came after the time of the first study and he resigned prior to the time of the second study, the fact that Hensley, a male employee, was promoted instead of England was not readily apparent in the first or second study. If, however, HUD had conducted the study in the manner detailed in the reports, HUD would have discovered this fact and would have taken appropriate remedial measures if discrimination were found. England argues that this failure to identify her as a possible victim of discrimination and to order appropriate remedial measures constituted a breach of the Order.

## SUBJECT MATTER JURISDICTION

■ Initially we must address HUD's argument that the district court's dismissal of the action should be affirmed on the separate ground that the district court lacked subject matter jurisdiction. Although HUD did not file a cross-appeal of the district court's denial of its motion to dismiss for lack of subject matter jurisdiction, this Court may affirm a dismissal of a lawsuit for lack of jurisdiction in the district court.[1]

HUD contends that the district court lacked subject matter jurisdiction because England failed to exhaust her administrative remedies prior to filing suit in the district court. Under Title VII, an aggrieved federal employee may not file a lawsuit in U.S. District Court unless such employee has received notice of final action on an administrative complaint from the EEOC or 180 days have elapsed since the employee filed an administrative complaint.[2] HUD argues that England did not file an administrative complaint prior to

---

**1.** See *Latin America Prop. & Casualty Ins. Co. v. Hi–Lift Marina, Inc.*, 887 F.2d 1477, 1479 (11th Cir.1989).

**2.** 42 U.S.C. § 2000e–16(c).

initiating this suit and is thus precluded from suing in federal court.

The district court denied HUD's motion to dismiss the complaint, relying on cases which hold that a party to a conciliation agreement may sue in federal court for a breach of the agreement without first filing an administrative complaint.[3] HUD attempts to distinguish these cases by arguing that England was not a named plaintiff in the settlement agreement and by arguing that the settlement agreement did not contain a provision waiving the plaintiffs' rights to file Title VII suits. We do not find these distinctions sufficient to render the *Eatmon* line of cases inapplicable. First, England was a member of the class of plaintiffs who settled the claim and was thus a party to the Consent Order. The fact that she was not a named representative does not prevent her from enforcing the agreement.

Additionally, although the agreement did not explicitly waive the parties' rights to bring a Title VII suit, the district court's dismissal of the suit included dismissal with prejudice of all class members' claims that existed prior to the approval of the Consent Decree. The effect of the agreement, then, was to bar England's Title VII claim of discrimination in promotion because it existed prior to the entry of the Order. We find that the settlement agreement is similar in all important respects to conciliation and predetermination agreements and that the *Eatmon* and *Brewer* line of cases are applicable to this case. Accordingly, it was not necessary for England to file a claim with the EEOC prior to instituting a suit in United States District Court for breach of the Order.

HUD also contends that a party to a consent order may only enforce the order if the district court has not yet dismissed the action. Here, the district court that presided over the original class action released its jurisdiction over the action and dismissed

with prejudice the class members' previously-existing claims. HUD thus argues that the dismissal of the class action divested any court from entertaining a suit for breach of the consent decree.

HUD contends that in *Kent v. Baker*,[4] this Court allowed a plaintiff to enforce a settlement agreement made prior to the time the action was dismissed; however, our Court reserved the question of whether a party may bring an action after the action has been dismissed.[5] We hold that the issue in *Kent* is in no way related to this case. That was not a suit based upon a consent decree. We find that the district court's dismissal of the lawsuit does not preclude England from asserting her breach of consent order claim. England would be precluded from bringing a Title VII action. That claim was merged in the Consent Decree and would be barred by principles of claim preclusion. However, England's claim is based on the obligations contained in the Consent Decree; the dismissal of the class action did not operate to bar this lawsuit based on the consent order claim. The district court's dismissal of the lawsuit did not imply that HUD had in fact complied with the Order; it merely held that HUD's *reported* efforts were sufficient to comply insofar as the class action was concerned. Thus, we find that the district court appropriately exercised subject matter jurisdiction.

## SUMMARY JUDGMENT

■ In this case, the district court granted the defendant's motion for summary judgment, finding that the steps recited in the report submitted to the parties and the court were not required by the Order. Moreover, the court found that HUD's decision to undertake certain procedures to comply with the Order did not modify it to require HUD to continue to utilize these same procedures. The court thus conclud-

---

3. *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1508 (11th Cir.1985); *see also, Increase Minority Participation by Affirmative Change Today v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990); *Brewer v. Muscle Shoals Board of Education*, 790 F.2d 1515, 1519 (11th Cir.

1986); *Kirby v. Dole*, 736 F.2d 661 (11th Cir.1984) (dicta).

4. 815 F.2d 1395 (11th Cir.1987).

5. *Id.* at 1400 n. 4.

ed as a matter of law that HUD's failure to ask Appellant's supervisor whether a man had been promoted since the time that Appellant became eligible for a promotion did not constitute a breach of the agreement.

The district court made the following finding:

Plaintiff is correct in asserting that the disparate treatment between plaintiff and Hensley could have been discovered if plaintiff's supervisor had been asked if a male had been placed in a higher grade after plaintiff had become eligible for the position. The 1984 report to the court indicated that such a question was included as part 6 of the study. However, in plaintiff's case, the question was apparently not asked of plaintiff's supervisor. Thus, the court must determine whether defendant's failure to take one of the steps of the study constitutes a breach of the settlement agreement.

R2–34 at 15.

The district court went on to find that the individual steps of the studies were not a part of the settlement agreement. Our review of the record leads us to a contrary result. Paragraph 31 of the Consent Order states the following:

31. HUD agrees to provide to the Court and to counsel for the plaintiffs an Annual Report setting out the following information:

(c) A detailed description of the efforts made in compliance with the obligations set out in Paragraphs 17 through 21;

Govt. Exh. 5 at 14.

It is clear to us that the Consent Order required the government to make a study to identify the class members entitled to relief under this agreement. This is clearly demonstrated in Part VII captioned:

VII. RELIEF TO INDIVIDUAL CLASS MEMBERS

A. Identification of Class Members Entitled to Relief under this Agreement.

It is our conclusion that the Consent Order required the government to undertake an investigation of the disparity existing between the pay grades of employees in Region IV of HUD. The study was for the purpose of determining the reasons for the disparities and the identification of any persons who might have been discriminated against. As quoted above, the district court found that "the disparate treatment could have been discovered." HUD's mistake was a breach of the agreement and we reverse the entry of summary judgment for the defendant.

We vacate the judgment entered by the district court and remand for the court to determine what remedies, if any, to which plaintiff may be entitled pursuant to the consent decree.

## CONCLUSION

We hold that the district court had subject matter jurisdiction to entertain plaintiff's claim. We also hold that HUD was required, as a matter of law, to follow its reported procedures. We thus REVERSE the district court's entry of summary judgment in favor of HUD and REMAND the case for trial.