Angeless THOMPSON, Plaintiff,

v.

Togo D. WEST, Jr., Secretary
of the Army, Defendant.

Civ. A. No. 94–D–472–S.

United States District Court,
M.D. Alabama,
Southern Division.

April 12, 1995.

Kenneth Coy Sheets, Jr., Dothan, AL, for plaintiff.

Maj. James E. Macklin, U.S. Army Litigation Div., Arlington, VA, Kenneth E. Vines, Asst. U.S. Atty., Montgomery, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

This cause is before the court on defendant Togo D. West, Jr.'s motion filed October 17, 1994, for reconsideration of his motion to dismiss, in part, and for summary judgment.[1] The plaintiff failed to respond to the court's order to show cause why said motion should not be granted. On October 14, 1994, at a pretrial hearing in the above-styled case, the court issued a verbal decision dismissing the plaintiff's case without prejudice. The court determined that the plaintiff's failure to receive a right-to-sue notice from the Equal Employment Opportunity Commission (hereafter "EEOC") divested the court of subject matter jurisdiction over the plaintiff's claims asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The court followed its verbal decision with a written order dated October 17, 1994.

The issues addressed in the defendant's brief more fully informed the court of the facts and regulatory requirements concerning the framework surrounding government agency administrative processing of discrimination claims. Accordingly, after careful reconsideration, the court finds that contrary to its previous ruling, further administrative processing would be irrelevant to the proper disposition of this case. For the following reasons, the court finds that the defendant's motion is due to be granted.

## JURISDICTION AND VENUE

Based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genu-

---

1. Pursuant to Fed.R.Civ.P. 12(b), the court construes the motion to dismiss as one for summary judgment. When the movant submits a 12(b)(6) motion and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b). In support of his motion, the defendant has submitted various exhibits, which the court has considered in ruling on said motion.

ine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

## FACTS

The court, viewing the evidence in the light most favorable to Angeless Thompson (hereafter "plaintiff"), considers the following facts controlling in this case: The plaintiff commenced this action *pro se* on April 20, 1994, seeking redress for alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. On April 22, 1985, the plaintiff, a black female, began her career with the United States Army at its base located in Fort Rucker, Alabama. Throughout her employment, the plaintiff worked in various positions at the Fort Rucker Officer's Club (hereafter "Officer's Club").

In her complaint, the plaintiff alleges that the defendant engaged in the following discriminatory practices: (1) In 1988, the defendant allegedly promoted Sandy Camerson, a white female, to a part-time position, despite the fact that Camerson had worked at the Officer's Club for only ninety days. (2) The plaintiff alludes to the fact that her employer stated that she was working forty hours, the same as Sandy Camerson.[2] (3) In 1989, the plaintiff applied for and was denied several bartending positions. Management instead hired white females to fill these positions when vacancies arose. (4) The plaintiff asserts that "management kept coming up with excuses to keep [her] from moving forward in [her] career." Pl.'s Compl. at ¶ 3. For example, as a cocktail waitress, the plaintiff asserts that she earned more money than the bartenders and that management easily could have reassigned her to a bartender position. (5) In 1991, management promoted Lisa Adams, a white female, who had approximately five years less seniority than the plaintiff. (6) The plaintiff lists the names of six white females, all of whom allegedly were hired after the plaintiff but promoted before her. (7) The plaintiff contends that because she is black, the defendant denied her pay raises and denied her increased working hours for which she would have been paid. (8) The plaintiff asserts that in 1992, a white female employee was placed in a full-time position and did not forfeit any benefits, unlike the plaintiff, who was not offered a full-time position. (9) The plaintiff alleges that the defendant eliminated her position of custodial worker because she is black and in retaliation for seeking relief from the EEOC. (10) Finally, the plaintiff contends that she further was retaliated against when the defendant terminated her employment.

While neither the plaintiff nor the defendant have expounded upon the majority of accusations contained within the judicial complaint, the facts surrounding the elimination of her custodial worker position and her subsequent termination are set forth in detail: On April 2, 1993, the plaintiff received notice from the defendant via certified mail that the Department of the Army was eliminating the position of custodial worker, which she occupied.[3] *Id.,* Ex. 1 attached thereto. Therein, the Department of the Army articulated that it was abolishing this position "[a]s a result of a financial management decision." *Id.*

On May 5, 1993, the effective date of the elimination of her position, the defendant offered and the plaintiff accepted a flexible bar server job at the Officers' Club. Hence, the plaintiff was reinstated on May 6, 1993. *Id.,* Ex. 2 and Ex. 3 attached thereto. From May 7, 1993 until June 22, 1993, the plaintiff was scheduled to work nine days but failed to report to work or give notice of her absence on seven of those days. *Id.,* Ex. 4 attached thereto. The defendant asserts that the plaintiff was notified of her unsatisfactory

---

2. While the complaint does not clearly articulate the act of discrimination, one of the plaintiff's three charges filed with the EEOC, discussed *infra,* indicates that the plaintiff alleges discrimination in her hours of employment. Accordingly, the court construes these facts in the complaint as alleging such discrimination.

3. Apparently, on September 19, 1991, management reassigned the plaintiff from her position as a server to a custodial worker.

performance and warned that additional absences could result in termination. On August 11, 1993, after further absences, the defendant contends that the plaintiff was fired for "abandonment of position." *Id.*, Ex. 5 attached thereto.

As a result of the alleged discriminatory actions taken against her, the plaintiff initiated the following administrative actions: On April 11, 1991, the plaintiff contacted an Equal Employment Opportunity (hereafter "EEO") counselor and filed an informal complaint, alleging that because of her race, she was discriminated against when she received fewer duty hours and less pay than her coworkers. The plaintiff then filed a formal charge of discrimination on May 23, 1991, which included those allegations contained in her informal complaint. *Id.*, Ex. 7 attached thereto.

On April 2, 1992, after conducting an investigation into the plaintiff's complaint, an investigator from the United States Army Civilian Appellate Review Agency found that the plaintiff had failed to present a prima facie case of discrimination. By letter dated September 21, 1993, the Army issued a final decision, finding no discrimination. *Id.*, Ex. 9 attached thereto. Subsequently, the plaintiff appealed the Army's final decision to the EEOC Office of Federal Operations (hereafter "OFO"). *Id.*, Ex. 10 attached thereto. On the date the plaintiff commenced this action, the EEOC OFO had not yet acted on the appeal.

On April 20, 1993, the plaintiff again contacted an EEO counselor, alleging that the defendant eliminated her custodial worker position because she is black and in retaliation for filing her first EEOC complaint. *Id.*, Ex. 11 attached thereto. Thereafter, on October 26, 1993, the plaintiff filed a charge with the EEOC, reiterating those claims contained within her informal complaint.[4] *Id.*, Ex. 12 attached thereto.

On August 23, 1993, the plaintiff filed a third informal complaint alleging that her termination was in retaliation for filing the first two complaints.[5] *Id.*, Ex. 13 attached thereto. On October 4, 1993, the plaintiff asserted her retaliation claim in a formal complaint with the EEOC. *Id.*, Ex. 14 attached thereto. After investigation, on March 10, 1994, the Department of Defense's Office of Complaint Investigations found that no discrimination had occurred.

## DISCUSSION

### I. *Title VII: Administrative Remedies*

■ The defendant contends that many of the claims contained in the plaintiff's judicial complaint were not included in any of her administrative complaints, thus, precluding the plaintiff from now asserting said claims in a federal action. A federal employee must timely exhaust administrative remedies before filing an employment discrimination suit under Title VII. *Brown v. General Serv. Admin.*, 425 U.S. 820, 829–32, 96 S.Ct. 1961, 1966–68, 48 L.Ed.2d 402 (1976). If an employee fails to exhaust his or her administrative remedies under Title VII, the court lacks subject matter jurisdiction to entertain the lawsuit. *Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir.1984); *Kizas v. Webster*, 707 F.2d 524, 543–46 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

■ Congress has empowered the EEOC with the responsibility to issue rules and regulations implementing the provisions of Title VII. 42 U.S.C. § 2000e–16(b). Regulations, properly promulgated, have the force and effect of law. *United States v. Nixon*, 418 U.S. 683, 695, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974). Pursuant to congressional authority, the EEOC has promulgated regulations, which provide that in asserting a discrimination charge against the federal government, as here, an aggrieved employee

4. Because the plaintiff waited 123 days after her final interview before she filed this formal complaint, the Army dismissed her complaint for failure to comply with the time limits in 29 C.F.R. § 1614.105(a). The plaintiff appealed this dismissal to the EEOC OFO which remanded the complaint for further processing. Before any

other action was taken, the plaintiff commenced this action in federal court.

5. While the plaintiff also asserted a discrimination claim based on a physical disability, she did not allege said claim in her judicial complaint.

must first undergo a counseling period. The EEOC regulations require an aggrieved employee to contact a designated EEO counselor within forty-five days of "the matter alleged to be discriminatory."[6] 29 C.F.R. § 1614.105(a)(1). This requirement is waived, however, if the aggrieved employee can show cause for failing to meet the forty-five day deadline. *Id.* at § 1614.105(a)(2).

These rules are not mere technicalities, but are integral parts of Congress' statutory scheme of achieving a "careful blend of administrative and judicial enforcement powers." *Brown,* 425 U.S. at 833, 96 S.Ct. at 1968; *see also McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Kizas,* 707 F.2d at 544. The Supreme Court has repeatedly upheld dismissal or summary judgment in cases where a plaintiff has failed to pursue an administrative discrimination complaint in a timely manner. *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Similarly, it has long been settled in this circuit that a federal employee's unexcused failure to timely initiate an administrative discrimination complaint results in dismissal of the suit for failure to state a claim upon which relief may be granted. *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir.1986); *Bickham v. Miller,* 584 F.2d 736, 737–38 (5th Cir.1978);[7] *Oaxaca v. Roscoe,* 641 F.2d 386, 391–92 (5th Cir.1981).[8]

The requirement of fully exhausting administrative remedies serves substantial policy considerations. In *Sampson v. Civiletti,* the Court of Appeals for the Tenth Circuit observed that:

> Exhaustion of administrative remedies serves important policies. The requirement that discrimination complaints first be presented to an agency rather than a court encourages informal, conciliation-oriented resolution of disputes and reduces the burden on federal courts.... It is also "particularly important that the agency develop a record and have the opportunity to exercise its discretion, to apply its expertise, and possibly, to discover and correct its own errors."

632 F.2d 860, 862–63 (10th Cir.1980) (citations omitted).

### A. Plaintiff's EEOC Complaint Filed on May 23, 1991

■ The defendant contends that a comparison of the charges contained within the plaintiff's judicial complaint and her May 23, 1991 EEOC complaint reveals that the plaintiff never raised administratively many of the claims she now raises in her lawsuit. The plaintiff did not merely miss a deadline. Rather, with the exception of her claim for discrimination in hours and pay, the plaintiff failed to exhaust *any* administrative remedies concerning all of the alleged discriminatory conduct occurring before the date of her contact with an EEO counselor, such as the 1988 and 1989 alleged denial of promotions. Even though the plaintiff possessed all the information needed to include such allegations of race discrimination at that time, she failed to do so.

---

**6.** These time limits were changed from 30 days to 45 days in 1992. Regardless which time period was in effect, the plaintiff has failed to timely initiate any contact on her extraneous discrimination claims, discussed *infra.*

**7.** Decisions of the Former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) *(en banc).*

**8.** Similarly, other circuits have upheld the dismissal of Title VII actions for failure to timely file

administrative claims of discrimination. *See Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir.1985) (upholding the district court's judgment, dismissing with prejudice the plaintiff's Title VII lawsuit for failure to file an administrative complaint within 30 days of the alleged discriminatory act); *Zagrafov v. Veterans Admin. Medical Center,* 779 F.2d 967, 969–70 (4th Cir. 1985); *Cano v. United States Postal Serv.,* 755 F.2d 221, 223 (1st Cir.1985) (affirming district court's entry of summary judgment); *Saltz v. Lehman,* 672 F.2d 207, 208–09 (D.C.Cir.1982).

Moreover, the court finds that the plaintiff has failed to show cause for failing to report the alleged discrimination within forty-five days of the acts. *See* 29 U.S.C. § 1614.105(a)(2). While the court recognizes that the forty-five day filing period may in some circumstances be subject to waiver, tolling or estoppel, *see generally Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the facts before the court do not warrant the application of the aforementioned equitable principles.

Hence, the court finds that contrary to its previous ruling, dismissing the plaintiff's complaint without prejudice so as to allow further administrative processing does not alter the fact that the plaintiff failed to make initial contact with an EEO counselor within forty-five days of the alleged discriminatory acts. If anything, even more time has elapsed since the happening of the alleged discrimination, lending even more weight to the imperative for the court to summarily dispose of the plaintiff's extraneous claims of discrimination for failure to timely pursue administrative action. Accordingly, those acts occurring prior to her contact with an EEO counselor on April 11, 1991 are time barred and now cannot be asserted in federal court. *See Benford v. Frank,* 943 F.2d 609, 612 (6th Cir.1991).

### B. *Plaintiff's EEOC Complaint Filed on October 26, 1993*

■ The defendant further contends that the allegations contained in the October 26, 1993 EEOC charge, which assert race discrimination in the elimination of her custodial worker position and retaliation for engaging in previously protected activities, are time barred for failure to wait the requisite 180 days before filing suit in federal court.

The very statute which waives sovereign immunity and grants jurisdiction in federal-sector Title VII cases also sets forth "certain preconditions" which must be satisfied before federal employees may bring their actions in district court. The regulations provide that an aggrieved employee may not file suit in federal court until 180 days have elapsed from the filing of a complaint with the EEOC. *See* 42 U.S.C. § 2000e–16(c).

■ At the time the plaintiff filed suit, the plaintiff's allegations of discrimination alleged in her October 26, 1993 charge were pending investigation. The agency had yet to take final action on the plaintiff's complaint of discrimination. The plaintiff's premature action made it impossible for the Army to conclude the investigation of her claims, to discover and correct its own errors, if any, and to finalize an administrative record. To withdraw from the administrative process in order to file suit, as the plaintiff has done, constitutes a failure to exhaust administrative remedies. *Tolbert v. United States,* 916 F.2d 245, 249 (5th Cir.1990); *Rivera v. U.S. Postal Service,* 830 F.2d 1037, 1039 (9th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988). *Cf. Jordan v. United States,* 522 F.2d 1128, 1132–33 (8th Cir.1975).

In *Tolbert,* a former federal employee appealed to the EEOC the agency decision of "no discrimination." 916 F.2d at 247. Before the EEOC had issued a decision and before the end of the 180–day waiting period, the plaintiff filed suit in federal court. The district court dismissed the complaint for failure to exhaust administrative remedies. On appeal, the Fifth Circuit stated: "[A]nyone who files too early, has, by definition, filed before [he or] she has exhausted [his or] her administrative remedies. . . . Thus, the court had no jurisdiction over the action, and was required to dismiss it." *Id.* at 248 (brackets supplied).

It is important to note that the court in *Tolbert* considered the possibility of allowing the plaintiff to cure the administrative defect. That court unambiguously stated in the negative and explained:

> To hold otherwise would allow a plaintiff to file an action and begin civil proceedings—discovery, motions to dismiss and for summary judgment, and so on—before completing the course of administrative review. A plaintiff could thereby largely circumvent the rule that she must exhaust her administrative remedies. To allow a plaintiff to proceed in such a fashion would, in short sequence, produce all of the evils that are designed to be avoided by requir-

ing exhaustion of administrative remedies.... The rule is simple: file in the time allotted, and neither before nor after. *Id.* at 249.

Here, the plaintiff filed a formal complaint on October 26, 1993 and 176 days later filed a complaint in federal court. In this case, as in *Tolbert,* the court finds that the plaintiff's failure to exhaust her administrative remedies and comply with the requirement to wait 180 days before filing suit cannot be cured by allowing the plaintiff to return to the administrative process. Had the plaintiff proceeded with her EEOC appeal in accordance with the governing regulations, the plaintiff could have sought review of the Army's final decision by the EEOC, or she could have properly filed suit in federal court. The plaintiff simply failed to pursue and complete the route within the EEOC system, which she alone chose, by withdrawing early and proceeding to federal court. The Army had no role in that decision. If the court were to allow the plaintiff to return to the administrative process, the court would go against statutory and regulatory authority, as well as established legal precedent.

### C. Plaintiff's EEOC Complaint Filed on October 4, 1993

As to the plaintiff's retaliatory discharge claim contained in her October 4, 1993 EEOC complaint, the court finds that the plaintiff has satisfied all precedent administrative requirements. Accordingly, the court will turn to the merits of the plaintiff's retaliatory discharge claim, as well as her claim asserting discrimination in hours and compensation.

### II. Title VII: Disparate Treatment

■ The plaintiff alleges that she was discriminated against because of her race. In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of racial animus. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 2754,

125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as is the case here, a plaintiff can establish intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework[9], the plaintiff must

> create an inference of discrimination by establishing a prima facie case. If he [or she] does so, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted).

### A. Discrimination in hours of employment and compensation

■ The plaintiff alleges that she is a victim of discrimination because she received fewer duty hours and less pay than her co-workers. Accordingly, the plaintiff must satisfy a prima facie case by establishing that: "(1) she is a member of a protected class, (2) was similarly situated with a person outside of the protected class, but (3) was denied a condition of employment afforded that person." *Thompkins v. Morris Brown College,* 752 F.2d 558, 562 n. 7 (11th Cir.1985) (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25).

■ While the plaintiff clearly is within a protected class, the court finds that the plaintiff has failed to establish a prima facie case

---

9. The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those

discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823.

of discrimination. Specifically, the plaintiff has not raised a genuine issue of material fact that her position was similar to the positions of her co-workers. At the time of the plaintiff's allegations, she worked as a part-time server. The plaintiff alleged disparate treatment by comparing herself with two other white workers, an intermittent-on-call server and an intermittent-on-call bartender.[10] The plaintiff simply has failed to presented *any* evidence, aside from the allegations contained in her complaint, that raises an inference that she received fewer duty hours and less pay because of her race. In federal court, a plaintiff, however, may not "rest on [her] pleadings" and survive summary judgment. *See* Fed.R.Civ.P. 56(e) (brackets supplied).[11]

## B. *Retaliation*

██ Title VII also protects employees against retaliation for engaging in statutorily protected activities, such as filing a charge with the EEOC. 42 U.S.C. § 2000e-3(a). Proof of retaliation is controlled by the framework set forth in *McDonnell Douglas* and *Burdine,* discussed *supra.*

██ The plaintiff asserts that her termination was in retaliation for filing complaints with the EEOC. In order to establish a prima facie case, the plaintiff must show "(1) that [s]he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986), *citing Canino v. United States Equal Employment Opportunity Commission,* 707 F.2d 468, 471 (11th Cir.1983); *Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994).

██ To establish the causal connection between the protected activity and the adverse employment action, the plaintiff

must demonstrate that the filing of a charge with the EEOC "was a 'but for' cause of the adverse employment decision.... If the employee does not bear that burden of persuasion, he or she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). In other words, the "causal link" element requires "merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Board of Educ.,* 757 F.2d 1187, 1189 (11th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985), quoted in *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 920 (11th Cir.1993).

██ While the plaintiff has not provided the court with any evidence in opposition to the defendant's motion, her termination and the filing of her complaints with the EEOC are not completely remote in time. Assuming, without deciding, that the plaintiff has established a prima facie case, the defendant has provided a legitimate, nondiscriminatory reason for firing her. According to the defendant, the sole cause of the plaintiff's termination was her unexcused and unexplained absences from work and management's subsequent belief that the plaintiff had abandoned her position. The plaintiff, however, has failed to offer any evidence to prove that her termination was a pretext. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1124, n. 12 (11th Cir.1993).

## CONCLUSION

Accordingly, summary judgment is due to be granted in favor of defendant Togo D. West, Jr., and against plaintiff Angeless Thompson.

---

10. An intermittent-on-call employee works on an "as needed" basis. Def.'s Mot. Summ. J., Ex. 18 attached thereto.

11. Rule 56(e) states in part:
    When a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere allegations or denials of the adverse party's**

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. (Emphasis supplied.)