**James F. HOWELL, Plaintiff,**

v.

**DEPARTMENT OF THE ARMY and Togo D. West, Jr., Secretary of the Army, Defendants.**

**Civil Action No. 96–T–261–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Jan. 30, 1997.

Joel M. Nomberg, Dothan, AL, for plaintiff.

Redding Pitt, U.S. Atty., Ann Ashton Holmes, U.S. Atty's Office, Montgomery, AL, for defendants.

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff James F. Howell, a white federal employee working for the Department of the Army at Fort Rucker, Alabama, charges that he had suffered employment discrimination on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, when he was passed over for promotion in 1984, and again in 1991, in favor of an allegedly less-experienced and less-qualified black employee. He further charges that the Army failed

to comply with the terms of a written negotiated settlement agreement ("NSA") entered into by the parties.[1] Howell names as defendants the Department of the Army and its Secretary. He seeks to invoke the court's federal-question jurisdiction, 28 U.S.C.A. § 1331, and jurisdiction under the general civil rights statute, 28 U.S.C.A. § 1343.[2]

This lawsuit is now before the court on defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons that follow, the court concludes that the defendants' motion should be granted.

## I. MOTION TO DISMISS AND SUMMARY JUDGMENT

Defendants rest their motion to dismiss or, in the alternative, motion for summary judgment on the grounds that Howell has no cause of action, because his administrative complaint was time-barred for missing regulatory filing deadlines, and that this court has no subject-matter jurisdiction to review the EEOC's final decision regarding an alleged breach by the Department of the Army of an NSA.

A number of courts regard regulatory deadlines applying to federal employee lawsuits against the government as akin to statutes of limitations, rather than jurisdictional requirements. *See, e.g., National Cement Co. v. Federal Mine Safety and Health Review Comm'n*, 27 F.3d 526, 530 (11th Cir. 1994); *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir.1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."); *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir.1995); *Bohac v. West*, 85 F.3d 306, 311 (7th Cir.1996); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476–77 (5th Cir.1991) ("If an EEOC charge is

untimely filed, a suit based upon the untimely charge should be dismissed.").

■■■ This approach has two practical and procedural consequences. First, failure to meet a filing deadline constitutes failure to state a claim for purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. April 3, 1981)[3]; *Thompson v. West*, 883 F.Supp. 1502, 1507 (M.D.Ala.1995). Second, as with statutes of limitations in general, equitable tolling applies in certain instances to excuse failures to timely file. *Mosley v. Pena*, 100 F.3d 1515, 1517 (10th Cir.1996); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir.1996); 29 C.F.R. § 1614.604(c) ("The time limits in this part are subject to waiver, estoppel and equitable tolling."). Of course, "A complaining party in a Title VII case bears the burden of providing the justification for application of equitable tolling principles." *Wilson v. Secretary, Department of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995).

At least one court has recently held that meeting all administrative filing deadlines is a jurisdictional requirement for eventually filing suit in federal court, and that failure to meet all deadlines constitutes failure to exhaust administrative remedies, resulting in no waiver of sovereign immunity under Title VII, and a corresponding lack of subject-matter jurisdiction under Rule 12(b)(1), rather than Rule 12(b)(6), of the Federal Rules of Civil Procedure. *Dillard v. Runyon*, 928 F.Supp. 1316, 1322–23 (S.D.N.Y.1996) ("A federal employee's suit after failure to avail herself of her administrative remedies ... in a timely fashion, does not trigger the waiver of sovereign immunity and deprives a federal court of subject-matter jurisdiction to hear that employee's [Title VII] claim.").

**1.** In Howell's response to defendants' motion to dismiss or, in the alternative, for summary judgment, he admits that "Title VII is a federal employee's exclusive remedy for his claims."

**2.** Howell additionally cites jurisdictional statutes with no possible relevance to this matter, and a nonexistent section of the civil rights statutes, to

support his claim to this court's subject-matter jurisdiction.

**3.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

However, the *Dillard* court's approach produces a distinction without a difference, for two reasons. First, and admittedly, a court can look at depositions, affidavits and other documents to examine the basis of its own subject-matter jurisdiction under Rule 12(b)(1).[4] However, given the same supporting evidence, a court may choose to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, as discussed below, thereby yielding a judgment about the propriety of allowing the case to go forward based on exactly the same evidence. Second, interpreting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the *Dillard* court demonstrated that, even if failure to timely file is treated as a jurisdictional bar, the "jurisdictional nature of the deadlines and the possibility that they may be equitably tolled are not at all inconsistent," *id.* at 1324, which brought it to the same result reached by courts treating the time limits as more akin to statutes of limitations. In other words, in this context, analysis of subject-matter jurisdiction and analysis of whether a cause of action is stated for which the court can grant relief converge. *Cf. McGinty v. United States Dep't of the Army,* 900 F.2d 1114, 1118 (7th Cir.1990) ("We need not decide whether [case law] would require the ADEA administrative deadlines to be treated like statutes of limitations rather than jurisdictional prerequisites because McGinty's complaint must be dismissed under either analysis.").

■ Both sides in this action submitted documents outside the pleadings to support their respective positions. According to Rule 12(b) of the Federal Rules of Civil Procedure, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the matter shall be treated as one

for summary judgment and disposed of as provided in Rule 56." Because the court has chosen to consider these submissions, the motion to dismiss to the extent it rests on subsection (6) can effectively be treated as a summary-judgment motion. *Fikes v. City of Daphne,* 79 F.3d 1079, 1083 (11th Cir.1996). This conversion is at the court's own discretion. *Jones v. Automobile Ins. Co. of Hartford, Conn.,* 917 F.2d 1528, 1532 (11th Cir. 1990). However, once the court chooses to consider materials outside the pleadings and treat the motion as one for summary judgment, the court is ordinarily required to give "clear notice of the need to file affidavits or other responsive materials and of the consequences of default." *Farred v. Hicks,* 915 F.2d 1530, 1534 (11th Cir.1990). The law of this circuit requires strict adherence to the 10–day notice provision of Rule 56. *Jones,* 917 F.2d at 1531.

■ However, in this case, the motion has been made, from the outset, in the alternative for summary judgment. Therefore there can be no question but that the parties have always been on notice, and are represented by counsel who can be presumed to appreciate "the need to file affidavits or other responsive materials and of the consequences of default." Additional or special protective notice is therefore not required before the court may proceed to treat the motion as one for summary judgment. *Cf. Bohac,* 85 F.3d at 312, 313 ("In addition, the district court's conversion of the Army's motion cannot have come as a surprise to Bohac as both parties presented material outside the pleadings.").

Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Cel-*

4. *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In response to a factual motion challenging subject-matter jurisdiction, the trial court is free to "weigh the evidence and satisfy itself as to the existence of its power to

hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations." *Id.* The court's inquiry is not limited to facts undisputed on the record. The court may also resolve disputed facts in order to determine the propriety of asserting jurisdiction. *Id.*

*otex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

The facts of this case, when viewed in a light most favorable to Howell, are as follows. Howell began working as a firefighter at Fort Rucker in 1973. On August 17, 1993, he first contacted an EEO counselor to complain that he had been the victim of race discrimination. Specifically, Howell claimed that, in 1984, a black applicant with lesser qualifications was promoted over him to the position of Lead Firefighter, and that again, in 1991, the same individual was preselected and promoted ahead of him to the position of Station Chief. Howell says that he only learned about the impermissible, discriminatory grounds upon which he had not been considered for promotion in a conversation with Fire Chief Grammont, which conversation occurred less than 45 days before Howell filed his complaint with the EEO Office on base in 1993. Howell further states that,

prior to 1995, he never saw any notice posted in any work site on Fort Rucker publicizing the requirement to report any act of discrimination within 45 days of the incident giving rise to a claim of discrimination.

After filing a formal EEO complaint on November 23, 1993, Howell entered into an NSA with the Fort Rucker Army Aviation Center, his employer, on December 13, 1993. The NSA was meant to be a complete and binding settlement of the complaint. However, at the time of the agreement Howell was working at a government grade level of GS–8, and, because of a restructuring in the Fire Department, the supervisory position Howell was to be given priority consideration for was newly rated GS–12. The law generally forbids promoting an individual directly from GS–8 to GS–12 because of regulatory time-in-grade requirements.[5] A representative of the Fort Rucker EEO office told Howell that this grade skip was an inadvertent oversight by the drafters of the NSA, and he attempted to renegotiate the NSA with Howell to give him priority consideration for a position at GS–10, the maximum grade to which the Army believed Howell was eligible to be promoted. Howell rejected this proposal for modification or correction of the NSA.

In accordance with the procedures laid out in 29 C.F.R. § 1614.504 for complaining of a breach of an NSA, Howell wrote to the EEO Compliance and Complaints Review Agency (EEOCCRA) shortly after his meeting with the Fort Rucker EEO administrator, in March 1994, claiming the Army was in non-compliance.[6] The Agency took the position

---

**5.** The applicable regulations provide that,
"Candidates for advancement to a position at GS–12 and above must have completed a minimum of 52 weeks in positions no more than one grade lower ... than the position to be filled."
5 C.F.R. § 300.604(a). They further provide that,
"Candidates for advancement to a position at GS–6 through GS–11 must have completed a minimum of 52 weeks in positions:
(1) No more than two grades lower (or equivalent) when the position to be filled is in a line of work properly classified at 2–grade intervals; or
(2) No more than one grade lower (or equivalent) when the position to be filled is in a line of work properly classified at 1–grade intervals; or

(3) No more than one or two grades lower (or equivalent), as determined by the agency, when the position to be filled is in a line of work properly classified at 1–grade intervals but has a mixed interval promotion pattern."
5 C.F.R. § 300.604(b).

**6.** In pertinent part: "If the complainant believes that the agency has failed to comply with the terms of a settlement agreement ... [t]he complainant may request that the terms of [the] settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." 29 C.F.R. § 1614.504(a). If not satisfied by the response of the Agency, the complainant may further appeal to the Commission. *Id.* at subpart (b).

that the NSA was unenforceable because it contravened the time-in-grade regulations, and that therefore reinstatement of the original EEO complaint filed by Howell was the only option left. Once the complaint was reinstated, the EEO office at Fort Rucker dismissed the complaint in March of 1995 because of Howell's original failure to file within 45 days of the events underlying the charge of discriminatory treatment, which allegedly occurred in 1984 and 1991. Howell appealed the decision. to the EEOC, and initiated this lawsuit some 10 months after dismissal of his complaint. Thereafter, the appeal was also dismissed by the EEOC because Howell had filed a judicial complaint.[7]

## III. DISCUSSION

### A. Title VII Complaint

There are several questions that must be addressed in order to determine whether Howell presents a viable claim for relief. First, does this court have subject-matter jurisdiction over Howell's Title VII complaint? Second, is his claim time-barred? Third, if so, are there equitable grounds for overlooking that fault? Finally, has the Army, in any case, taken action that effectively waives its right to assert that Howell has failed to meet filing deadlines?

#### 1. Subject–Matter Jurisdiction:

*Exhaustion of Administrative Remedies*

■ This court has subject-matter jurisdiction over Howell's Title VII complaint of employment discrimination only if he first exhausted the administrative remedies available to him. 42 U.S.C.A. § 2000e–5(f)(1); *Virgo v. Riviera Beach Associates. Ltd.*, 30 F.3d 1350, 1359 (11th Cir.1994). As stated in a memorandum on avenues of redress for EEO complaints addressed from EEO Offi-

cer James W. Harris at Fort Rucker to all employees, and included in a letter to Howell dated November 23, 1993,[8] "you must be aware that if you elect to file an administrative complaint rather than filing directly in U.S. District Court, ... you must exhaust your administrative remedies before you can file a civil action." One of the ways in which exhaustion might occur, the memorandum goes on to say, is if "after 180 calendar days from the date you filed an appeal with the EEOC[,] the EEOC has not issued a final decision on the appeal."[9] On April 3, 1995, Howell appealed the Agency's February 16, 1995, ruling that the NSA was unenforceable and his administrative complaint must be reinstated, and the subsequent decision by the EEO office at Fort Rucker on March 1, 1995, to dismiss his complaint as time-barred. Howell brought this lawsuit some 10 months, or more than 180 days, later, on February 16, 1996, while his appeal was still pending. The Fort Rucker EEO Office then wrote to the EEOC on March 5, 1996, advising that the appeal should be dismissed because a case had been filed in federal district court. The defendants have not challenged this characterization of the sequence of events, and so the court finds that Howell properly exhausted his administrative remedies and was entitled to bring his Title VII claim of discrimination in a federal district court. 42 U.S.C.A. § 2000e–5(f)(3).

#### 2. Deadlines

■ The regulations governing equal employment opportunities in the federal sector set a deadline of 45 days, starting from the date of the matter or personnel action alleged to be discriminatory, for consulting an EEO counselor at the workplace. 29 C.F.R. § 1614.105.[10] This is a prerequisite to filing a complaint, "in order to try to informally resolve" employment discrimination disputes. *Id.* There can be no question, then, but that

---

7. "The agency shall dismiss a complaint ... (c) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint." 29 C.F.R. § 1614.107.

8. Plaintiff's response to motion to dismiss, at Exh. C.

9. *Id.; 29 C.F.R. § 1614.408(d).*

10. "An aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory." § 1614.105(a)[1].

**1300**

the answer to the second question the court posed is: yes. Because Howell waited several years before contacting an EEO counselor his complaint in this court is time-barred.

### 3. Equitable Waiver of Time Limits

■ In this circuit, "a federal employee's unexcused failure to timely initiate an administrative discrimination complaint results in dismissal of the suit for failure to state a claim upon which relief may be granted." *Thompson v. West*, 883 F.Supp. 1502, 1507 (M.D.Ala.1995); *see also Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir.1986). In the context of an EEO complaint, however, certain mandatory exceptions, which excuse a complainant who has failed to meet filing deadlines, apply: "The agency ... shall extend the 45–day time limit ... when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been (sic) known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency...." 29 C.F.R. § 1614.105(a)(2). This regulation lists, in the disjunctive, three specific grounds and one catch-all ground for mandatory extension of the filing deadline. Howell, by claiming that he never saw publication or otherwise received any notice of the filing deadlines, and never knew that he had not been considered for promotion because of his race until he was told so by one of his superiors in 1993, is arguing that at least the first two of these exceptions apply to his case.

■ i. *Failure of Notice.* The employer has an affirmative obligation to provide its employees with "notice of [these] time limits and [the] necessity of contacting a Counselor before filing a complaint," 29 C.F.R.

§ 1614.102(b)(6), and to "publicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO Counselors." *Id.* Notice by the employer "is sufficient only if it is reasonably geared to inform an employee that he must see an EEO counselor within 45 days of the alleged discriminatory action." *Jakubiak v. Perry*, 101 F.3d 23, 27 (4th Cir. 1996). *See also Johnson*, 47 F.3d at 918.

■ The Army has submitted evidence showing that Howell participated in a three-hour program on prevention of sexual harassment on January 4, 1993, which reviewed EEO complaint filing procedures and deadlines.[11] This was more than six months before he first contacted an EEO counselor with his concerns. Participants in the program also received a handout which included a detailed overview of procedures and time frames for bringing complaints.[12] Also, for many years, the EEO office at Fort Rucker has published complaint procedure posters containing detailed descriptions of the procedures and time frames for filing EEO complaints. These posters are distributed to all serviced organizations and displayed on bulletin boards throughout the installation.[13]

■ For his part, Howell's original complaint in this case makes no reference to the extensive delay of almost two-and-a-half years between the events he claims evidenced discrimination against him on the basis of his race, and the first meeting he had with the EEO counselor at Fort Rucker. His amended response to the defendants' pending motion merely asserts, with circular argument, that "The Plaintiff had no knowledge of the 45 day requirement to file his complaint with the EEO Office at Fort Rucker as no notice was published to his knowledge." [14] But the test is not a subjective one; the question is whether the advertisements were reasonably calculated to give notice of the deadlines. *Jakubiak*, 101 F.3d at 27.

---

11. Defendants' motion to supplement, filed on January 10, 1997, at Exh. C.

12. *Id.* at Exh. D (affidavit of James W. Harris, EEO Officer at Fort Rucker).

13. *Id.*

14. Howell also swears, by affidavit, that "prior to 1995" he had never seen any notice posted at any work site on Fort Rucker setting forth the 45–day requirement for filing an EEO complaint.

Howell's attempt to excuse himself from the requirement to timely file, through stating by affidavit that he did not know about the deadline and by referencing a statement in his "precomplaint," a form filled out in connection with his initial meeting with the Fort Rucker EEO counselor, that he "had no knowledge of a 45-day limitation until [his] meeting with the EEO office on 8–17–93," [15] must fail, because he offers nothing to challenge the Army's evidence that posters were on display "throughout the installation." [16] The statute explicitly requires both absence of knowledge *and* failure of notification. Notice may clearly be constructive, so long as it is "reasonably geared to inform the complainant of the time limits." *Myles v. Schlesinger*, 436 F.Supp. 8, 17 (E.D.Pa.1976). If information about filing deadlines is reasonably available, the complainant "is estopped from asserting ignorance as an excuse for late filing." *Id.*

ii. *Knowledge of the Discriminatory Action.* The second excuse listed in § 1614.105(a)(2) is where the complainant "reasonably should not have" known that the "discriminatory matter or personnel action occurred." In his precomplaint, Howell also states that he had "just recently learned how and why the black applicant received his promotion and that, because of [Howell's] race, [he] was not even considered." In his amended response to defendants' pending motion, Howell further states that it was only as a result of a conversation he had with Fire Chief Grammont, less than 45 days before he initiated an EEO complaint, that he learned he had been twice passed over for promotion for discriminatory reasons. Howell does not reproduce the contents of that conversation, and so it remains unknown exactly what new information revealed therein broadened his

understanding so precipitously. Though the court understands the ambit of the excuse for a complainant who reasonably had no 'knowledge that the discriminatory matter or personnel action occurred,' to include those who learn, for the first time, that an action they already know about occurred for *discriminatory* reasons, Howell's evidence remains insufficient to withstand summary judgment. Howell does not explain how the promotion of the other individual, some two and a half years before Howell's initial contact with an EEO counselor, failed to alert him to the possibility of racial discrimination.[17] Howell, with three bites at the apple, still does not meet his burden of showing what *exactly* caused his understanding to effloresce, just before actually filing a complaint, which he neither knew nor should have known, through reasonable, diligent inquiry, during the initial timeframe for bringing a complaint. Rule 56(e) of the Federal Rules of Civil Procedure requires that the party opposing a summary judgment motion not rest on mere allegations. Instead, that party "must set forth specific facts showing that there is a genuine issue for trial." Summary and conclusory allegations are not sufficient. *Bridges v. Internal Revenue Service*, 433 F.2d 299, 300 (5th Cir.1970) (per curiam). Furthermore, federal law allows Title VII claimants to benefit from equitable tolling "only sparingly." *Irwin*, 498 U.S. at 95, 111 S.Ct. at 457. *See also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984); *National Cement Co.*, 27 F.3d at 530. Equitable tolling is not available when the claimant fails to exercise due diligence. *Id.; South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir.1994); *Weddel v. Secretary of Health and Human Services*, 100 F.3d 929, 931 (Fed.Cir. 1996) ("The doctrine of equitable tolling stops

**15.** Filed as Exhibit A to plaintiff's response to defendants' motion to dismiss.

**16.** Defendants' motion to supplement, filed on January 10, 1997, at Exh. D (affidavit of James W. Harris, EEO Officer at Fort Rucker).

**17.** The individual in question was a colleague of Howell's at Fort Rucker for at least twelve years prior to his second promotion. Although it may be possible that Howell had no opportunity to learn what the promotee's qualifications were,

relative to his own, until shortly before filing his complaint, Howell has not provided the court with any kind of explanation to that effect. Certainly, if someone feels they are deserving of a promotion that is handed to another, it is only reasonable for that person to make prompt inquiry to proper authorities as to why he or she was passed over. There is nothing in the record to suggest Howell was in any way diligent, or ever faced opposition to efforts to discover why he was not promoted.

the running of the statute of limitation if, despite all due diligence, plaintiffs are unable to obtain essential information concerning the existence of their claim."). If he had further information to legitimize his late filing, surely Howell, who, as said, has had three chances to do so already, would have set it forth. The burdens courts have set upon plaintiffs who wish to invoke the mercy of equitable tolling are not so light as to spare Howell.[18]

### 4. Waiver

 Howell's final attempt to excuse his dilatory pursuit of this claim is to argue that, by negotiating a settlement with him, despite knowing that he filed his complaint long after the regulatory deadline had passed, the Army impliedly waived, consented to, or excused his tardiness. This argument must fail for two reasons.

First, the willingness of the Army to work with Howell towards a mutually satisfactory and swift resolution of his claim in no way prejudiced his rights or deprived him of any advantage or opportunity he would otherwise have enjoyed. The negotiation, declared illegality, proposed modification, and ultimate rejection, of the NSA left Howell in no worse a position than if the Army had originally rejected his claim as time-barred. If Howell did suffer any form of injury from the manner in which his case proceeded that ought to be equitably redressed by this court, he has not shown it.

Second, the court is informed by the decision in a factually very similar case, *Briones v. Runyon,* 101 F.3d 287 (2d Cir.1996), that the Army should not be found to have waived the requirement that Howell file his complaint before the regulatory deadline. In *Briones,* the defendant made a motion to dismiss or, in the alternative, for summary judgment, because Briones had failed to contact his workplace EEO counselor regarding

his complaint until 10 months after the most recent acts of alleged racial discrimination leading to his termination from employment with the Postal Service. The district court granted the defendant's motion for summary judgment. The Second Circuit Court of Appeals found that "failure to bring a claim within the [regulatory] period ordinarily would have precluded a plaintiff from pursuing a discrimination claim in federal court," *id.* at 289 (citing *Girard v. Rubin,* 62 F.3d 1244, 1246 (9th Cir.1995)), but that "the statutory requirement for filing is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling." *Id.* (citing *Van Zant,* 80 F.3d at 712).

The Second Circuit, following the reasoning of the Ninth Circuit, found Briones was entitled to a finding of waiver of the filing requirements. In *Girard,* as explained by the court in *Briones,* "the plaintiff had contacted his EEO counselor nearly three years after the alleged discriminatory acts of the [IRS]," but "the EEOC ruled that his claim was timely because he 'could not have reasonably known'" that his discharge was improper until so informed by the EEO counselor. *Id.* at 290. After the complaint was dismissed by the agency on the merits, Girard filed suit in federal court, where he was defeated on a summary judgment motion by the IRS on the grounds that he failed to meet the filing deadline. The Ninth Circuit reversed that decision, because the " 'IRS did not have final say on the matter.... [The EEOC's order finding the complaint to be timely filed] was a final binding order on the IRS.' " *Id.* (quoting *Girard,* 62 F.3d at 1247). In so finding, the Ninth Circuit "acknowledged case law holding that in a situation where a defendant agency receives and accepts a complaint, begins investigating, and later determines that the filing was untimely, the agency does not waive its right to argue lack of timeliness in district court...." *Id.*

---

18. "The time limits in this part are subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c). Courts have read a tough standard into this regulation. *See, e.g., Dillard,* 928 F.Supp. at 1326 ("Equitable tolling redresses delay caused by the affirmative misconduct of the opposing party."); *Wilson,* 65 F.3d at 404, 405 (citing § 1614.604(c), and stating that possible

bases for tolling include pendency of suit between the same parties in the wrong forum, plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them, and the EEOC's misleading the plaintiff about the nature of her rights— but equitable tolling is only warranted where due diligence has been exercised).

Similarly, following a pre-investigation agency determination that Briones's filing was untimely, the EEOC ruled the filing timely, and this unappealed ruling was binding on later actions. Thus, the Postal Service could not prevail in district court on a summary judgment motion for untimely filing.

Here, the Army sought to settle the complaint despite knowing that it was untimely filed; after the parties failed to resolve the matter through a negotiated settlement, the EEO office ruled that the complaint was untimely, and the EEOC never ruled on that decision on appeal because it dismissed the appeal once this lawsuit was filed. Thus, neither the EEO Review Agency nor the EEOC *ever issued a ruling*, that would later be binding upon the Army, that Howell's late filing was excused. The Agency and the Commission are the bodies whose rulings on timeliness could serve as grounds for a finding that the deadline had been waived—not the Army itself. In any event, the Army, by trying to negotiate with Howell, no more decided, to Howell's ultimate detriment, that his case warranted waiver of the filing deadline because he presented reasonable excuse for missing it, than it would have merely by "accept[ing] a complaint, begin[ning] investigat[ing], and later *determin[ing],*" as happened here, "that the filing was untimely." The Army did not waive its right to argue lack of timeliness before this court.

Cases cited by Howell to support his contention that the Army waived any objection to his failure to timely file are not to the contrary. *Oaxaca* stands for the proposition that a federal agency does *not* waive its right to object to late filing merely by accepting and investigating a complaint; rather, it does so only upon making a finding of discrimination. 641 F.2d at 390. *See also id.* at 390 n. 2 (reviewing case law on point); *Ward v. Califano,* 443 F.Supp. 89, 90–91 (D.D.C.1977) (waiver justified where no prejudice to defendant agency that has already made determination that the plaintiffs were victims of discrimination) A negotiated settlement, as occurred in this case, carries with it no such admission or finding of discrimination.

### B. Appeal of a Breach of the NSA

#### 1. Subject–Matter Jurisdiction over the NSA:

##### Does NSA Arise under Title VII?

▮ The law in this circuit is clear that federal courts have jurisdiction to hear claims for breach of NSA's—that is, conciliation and settlement agreements arrived at by parties in the course of resolving EEO complaints—without their first having to bring timely administrative complaints and exhaust their remedies with the EEOC. *See, e.g., England v. Kemp,* 976 F.2d 662, 665 (11th Cir.1992); *Increase Minority Participation by Affirmative Change Today v. Firestone,* 893 F.2d 1189, 1196 (11th Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 100 (1990); *Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515, 1519 (11th Cir.1986); *Eatmon v. Bristol Steel & Iron Works. Inc.,* 769 F.2d 1503, 1508 (11th Cir.1985).

The effect upon this case of *Morris v. City of Hobart,* 39 F.3d 1105 (10th Cir.1994), *cert. denied,* 514 U.S. 1109, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995), which distinguishes agreements reached within Title VII's elaborate regulatory scheme, from those arrived at between private parties after suit was originally brought in federal court, and holds that federal courts have no original, federal-question jurisdiction to enforce the latter form of agreement, is minimal, since this agreement *was* reached as part of the Title VII regulatory, informal dispute resolution process. This case does differ from those Eleventh Circuit Court of Appeals decisions cited above because Howell did pursue and exhaust administrative remedies for the breach he perceived in the Army's treatment of the NSA, but that difference should not operate to deprive Howell of a forum he is otherwise entitled to under the law of this circuit.

▮ A court examining whether a claim turns on a question of federal law in order to evaluate its own subject matter jurisdiction should focus on whether Congress evidenced an intent to provide a federal forum. *Merrell Dow Pharmaceuticals. Inc. v. Thompson,* 478 U.S. 804, 812, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). The EEO regu-

lations, 29 C.F.R. 1614.504, do not provide a complainant with a forum in federal court to seek enforcement of an NSA or to appeal a ruling by the EEOC that no breach occurred. But the *Eatmon* court ruled that

> "the crucial factor to Title VII jurisdiction over these types of cases is ... furtherance of the congressional goal of conciliation and voluntary compliance with Title VII.... Failure to permit these agreements to be enforced in federal court under Title VII could frustrate the congressional goal of compliance through conciliation."

*Id.* at 1512. On motion charging lack of subject-matter jurisdiction, the nonmoving party has the burden of showing that it properly invoked the court's jurisdiction. Fed. R.Civ. P. 12(b)(1); *Gorman v. Roberts,* 909 F.Supp. 1493 (M.D.Ala.1995). However, because the Eleventh Circuit Court of Appeals finds federal subject-matter jurisdiction over negotiated settlements is conferred by Title VII itself, Howell, merely by acknowledging that Title VII provides the exclusive remedy for his claims,[19] has complied with Rule 8's requirement that he plead the grounds upon which the court's jurisdiction to review the NSA, or the EEOCCRA's ruling of its unenforceability, depends. Fed. R.Civ.P. 8(a).[20]

### 2. The Nature of the Complaint

 Howell contends that the Army has improperly failed to comply with the NSA. However, Howell has presented nothing that places into question the defendants' position that the law generally forbids promoting an individual directly from GS–8 to GS–12 because of regulatory time-in-grade requirements. 5 C.F.R. § 300.604(a) & (b).[21] Howell's challenge to the NSA rests solely on 5

C.F.R. § 300.603(b)(7), which he argues permits advancement beyond what § 300.604(a) & (b) allows in cases where inequity to an employee in an individual meritorious case would otherwise result (inequity being defined in § 300.602(c) as involving a situation where a position is upgraded without change in the employee's duties or responsibilities, or where discrimination or administrative error prevented an employee from reaching a higher grade).[22] However, § 300.603(b)(7) goes on to say that "an employee may not be promoted more than *three* grades during any 52–week period on the basis of this paragraph." (Emphasis added). Thus, Howell still could not be promoted from Grade 8 to Grade 12, a four-step promotion, all-at-once.[23]

### IV. CONCLUSION

Because Howell has failed, without justification or excuse, to comply with the administrative filing requirements that are prerequisite to bringing Title VII suit in federal court, and because his claim that the NSA was materially breached by the Army is without merit, the court finds that defendants' motion to dismiss or, in the alternative, for summary judgment, is due to be granted. An appropriate judgment will be entered.

---

**19.** Plaintiff's Response, filed June 5, 1996, at 1. *See also Brown v. GSA,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

**20.** One case has held that, if a complainant seeks judicial review of an agency decision, he must satisfy Title VII's timeliness requirements. *Blackledge v. Brady,* 1990 WL 95566 (D.D.C.), at *7. However, since that case directly conflicts with the clear holding of the Eleventh Circuit line of cases, and does not clearly express the legal basis for its decision, the court will not follow it here.

**21.** *See supra* note 5.

**22.** Plaintiff's amended response filed on January 9, 1997, at 3.

**23.** Admittedly though, Howell could be promoted three grades, rather than two grades as contended by the Army, under this provision. But a three-grade promotion would not have met the requirements of the NSA Howell had with the Army either.