Natalie C. HOWARD, Plaintiff,

v.

William J. HENDERSON, Postmaster General for the United States Postal Service, Defendant.

No. CIV. A. 99–D–299–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 6, 2000.

Gary E. Atchison, Montgomery, AL, for Plaintiff.

Leura J. Garrett, U.S. Attorney's Office, Redding Pitt, U.S. Attorney's Office, Montgomery, AL, for Defendant.

*MEMORANDUM OPINION*

DE MENT, District Judge.

Before the court is the Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment filed by Defendant on July 1, 1999 ("Def.'s Mot."). On August 18, 1999, Plaintiff filed an untitled document in opposition to Defendant's Motion, which the court construes as a Response ("Pl.'s Resp."). Defendant filed a Reply on September 20, 1999 ("Def.'s Reply").[1] After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment is due to be granted.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e–5(f)(3) (Title VII). The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to deter-

---

1. Defendant submitted evidence along with his Motion. On July 6, 1999, the court issued an order stating that it would construe Defendant's Motion as one for summary judgment. Thereafter, Plaintiff submitted her Response, along with evidence. Both Parties, therefore, have addressed Defendant's Motion as one for summary judgment. Because it will not prejudice the Parties by doing so, the court will construe Defendant's Motion as one for summary judgment. *See* FED.R.CIV.P. 12(b) (stating the when the parties submit matters outside the pleadings and the court considers those matters on a motion to dismiss for failure to state a claim upon which relief can be granted the court shall treat the motion as one for summary judgment and inform the parties of its intent to do so).

mine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. An action is void of material issues for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

The undisputed facts are as follows: Plaintiff is a former employee of the United States Postal Service ("Postal Service"). (Pl.'s Aff., attached to Pl.'s Resp., ¶¶ 3, 11; Carrie Springer's Decl., Attach. 1 to Def.'s Mot., ¶¶ 6a, 6x.) On November 23, 1996, the Postal Service hired Plaintiff as a Part–Time–Flexible, Distribution Window and Markup Clerk for the Hayneville, Alabama Post Office. (Pl.'s Aff. ¶¶ 3, 4; Springer's Decl. ¶ 6a.) Plaintiff held probationary status with the Postal Service during her first 90 days of employment, from November 23, 1996, through February 20, 1997. (Springer's Decl. ¶ 6k.)

One week into her employment with the Postal Service, Plaintiff took maternity leave. (*Id.* ¶ 6l; Pl.'s Aff. ¶ 4.) Plaintiff was on maternity leave from November 29, 1996, through January 20, 1997. (Springer's Decl. ¶ 6l; Pl.'s Aff. ¶ 4.) As a result, Katie Zellars, Hayneville Postmaster and Plaintiff's immediate supervisor, was not able to complete Plaintiff's 30 and 60 day evaluations, which are standard Postal Service procedures for probationary employees. (Springer's Decl. ¶¶ 6k, 6m.)

After returning from maternity leave, in late January and early February 1997, Plaintiff participated in on-the-job window clerk training. (*Id.* ¶ 6o.) Soon thereafter, from February 10, 1997, through February 18, 1997, James Russell, On–The–Job Training Instructor, gave Plaintiff on-the-job training. (*Id.* ¶ 6p.) Russell rated Plaintiff's on-the-job performance as "marginal." (*Id.*) According to Russell, "[Plaintiff] could not determine the different classes of mail, she was slow when waiting on customers and often had to have help completing a transaction. The IRT con-

fuses her, she could not complete 1412 and do her close-out without help." (*Id.*)

Two days after completing on-the-job training with Russell, Plaintiff completed the Postal Service's mandatory standardized window clerk training examination. (*Id.* ¶ 6q.) One week later, on February 28, 1997, the Postal Service's National Test Administration Center reported that Plaintiff scored an "ineligible" rating on the standardized window clerk examination. (*Id.* ¶ 6r.) Because she received an ineligible rating on that examination, Plaintiff was not eligible to perform window clerk services, an essential function of a Distribution Window and Markup Clerk. (*Id.* ¶ 6s.)

The following month, on March 13, 1997, Zellars completed her 80 day evaluation of Plaintiff's on-the-job performance. (*Id.* ¶ 6u.) Zellars rated Plaintiff's performance in the six major, essential functional areas of the Distribution Window and Markup Clerk position—dependability, personal conduct, work quality, work quantity, work relations, and work methods. (*Id.*) Zellars rated Plaintiff's performance "unsatisfactory" in four of those areas— work quality, work quantity, work relations, and work methods—and "satisfactory" in the other two areas—dependability and personal conduct. (*Id.*)

The following week, on March 20, 1997, Zellars gave Plaintiff a Notice of Proposed Removal, which informed Plaintiff that her employment with the Postal Service would be terminated. (*Id.* ¶ 6v.) On April 3, 1997, Cody Ward, Manager, Post Office Operations, issued Plaintiff a Letter of Decision that upheld Zellars' decision to terminate Plaintiff's employment. (*Id.* ¶ 6w.) Consequently, effective April 19, 1997, Plaintiff's employment with the Postal Service terminated. (*Id.* ¶ 6x.)

Two weeks before Plaintiff's employment with the Postal Service ended, on April 4, 1997, the American Postal Work-

ers' Union ("APWU") filed a grievance on Plaintiff's behalf challenging the Postal Service's decision to terminate Plaintiff's employment.[2] (Debi Edmunds' Decl., Attach 2 to Def.'s Mot., ¶ 6; Pl.'s Aff. ¶ 14.) In her grievance, Plaintiff alleged that she should have been transferred to another craft within the Postal Service, not terminated, and that her training was flawed. (Edmunds' Decl., Ex. D.) Plaintiff's grievance did not allege discrimination. (*Id.*; Pl.'s Aff. ¶ 14.)

Almost one year later, on March 19, 1998, Arbitrator James J. Odom, Jr. held an arbitration hearing on Plaintiff's grievance. (Edmunds' Decl. ¶ 11.) Two months later, on May 18, 1998, Odom issued his arbitration award denying Plaintiff's grievance. (*Id.* ¶ 16; Pl.'s Aff. ¶ 15.) Odom reasoned that (1) the Postal Service's failure to place Plaintiff in an alternate position did not violate her contract because Plaintiff was hired for the position of Window Clerk, failed the training for that position, and there were no other positions available in her installation or the district for which Plaintiff was qualified, (Edmunds' Decl. ¶ 15;) and (2) the evidence did not show that the Postal Service breached or failed its responsibility to provide Plaintiff with adequate training. (*Id.* ¶ 14.)

The following month, on June 22, 1998, Plaintiff filed an appeal of her termination from the Postal Service with the Merit Systems Protection Board ("MSPB"). (*Id.* ¶ 17; Pl.'s Aff. ¶ 16.) In her appeal to the MSPB, Plaintiff alleged that (1) the Postal Service violated its procedures because it did not give Plaintiff notice of her rights to appeal her termination to the MSPB and (2) the Postal Service discriminated against Plaintiff based on her sex by terminating her because the Postal Service has retained and provided alternate positions to men who failed the window clerk

---

2. Under the terms of the National Agreement, the APWU is the exclusive bargaining unit representative for the Clerk Craft. (Ed-

munds' Decl. ¶ 5.) During her tenure with the Postal Service, Plaintiff was a Clerk Craft employee. (*Id.*)

examination. (Edmunds' Decl., Ex. H ¶¶ 27, 30a, 30b, 31a, 31b, 31c.)

The MSPB dismissed Plaintiff's appeal for lack of jurisdiction. (*Id.*, Ex. I at 1.) The MSPB found that, under federal law, in order for a Postal Service employee to appeal her termination she (1) must be a preference eligible, a management or supervisory employee, or an employee engaged in personnel work in other than a purely nonconfidential clerical capacity and (2) must have completed one year of current continuous service in the same or similar positions. (*Id.*, Ex. I at 2.)

Before the MSPB, Plaintiff did not contend that she was a management or supervisory employee or an employee engaged in personnel work. (*Id.*) Instead, Plaintiff alleged that she was preference eligible, and thus satisfied the first prerequisite to appealing her termination to the MSPB. (*Id.*) The MSPB agreed. (*Id.*, Ex. I at 3.)

Regarding the second prerequisite, Plaintiff conceded that she did not have one year of continuous service in the same or similar positions. (*Id.*, Ex. I at 2.) However, Plaintiff argued that as a disabled veteran she was a veterans readjustment appointment ("VRA") to the Postal Service and thus was excepted from the one year requirement. (*Id.*, Ex. I at 2–3.) The MSPB disagreed. The MSPB reasoned that Plaintiff's PS Form 50, which documented her appointment to the Postal Service, showed that Plaintiff was hired from a hiring worksheet, not as a VRA. (*Id.*, Ex. I at 3.) Because she was not a VRA, the MSPB found that Plaintiff was not excepted from the one year continuous service requirement. (*Id.*) The MSPB accordingly concluded that Plaintiff did not have the right to appeal her termination to the MSPB. (*Id.*)

Plaintiff petitioned the MSPB for a review of its decision dismissing her appeal. (*Id.*, Ex. J.) On February 2, 1999, the MSPB denied Plaintiff's petition because it did not meet the requirements for a reviewable petition, as set forth in 5 C.F.R. § 1201.115. (*Id.*)

The following month, on March 23, 1999, Plaintiff's attorney sent a letter to Fred Ott, Equal Employment Opportunity ("EEO") Counselor/Investigator in the Postal Service's Alabama District, requesting EEO counseling for Plaintiff. (Pl.'s Aff. ¶ 22; Otis Maclin's Decl., Attach. 5 to Def.'s Mot., ¶ 4.) Ott received Plaintiff's request three days later, on March 26, 1999. (Maclin's Decl. ¶ 4; Fred Ott's Decl., Attach. 4 to Def.'s Mot., ¶ 4.) That day, Ott interviewed Plaintiff regarding her discrimination claim against Defendant. (Maclin's Decl. ¶ 5.)

A few days later, on April 6, 1999, Plaintiff completed an EEO Information for Precomplaint Counseling Form. (*Id.* ¶ 6; Ott's Decl. ¶ 6.) The Postal Service's Alabama District EEO Office, in Birmingham, Alabama, received Plaintiff's Form on April 8, 1999. (Maclin's Decl. ¶ 6; Ott's Decl. ¶ 6.)

The following month, on May 25, 1999, Ott sent a Notice of Final Interview, which contained a Notice of Right to File Individual EEO Complaint and corresponding PS Form 2565, to Plaintiff. (Maclin's Decl. ¶ 7.) Soon thereafter, on June 10, 1999, the Alabama District's EEO Office received Plaintiff's formal EEO Complaint of Discrimination, PS Form 2565. (*Id.* ¶ 8; Pl.'s Aff. ¶ 23.) Later that month, on June 28, 1999, the Postal Service issued its Final Agency Decision dismissing Plaintiff's formal EEO complaint because Plaintiff failed to contact an EEO counselor within 45 days after her employment with the Postal Service terminated. (Maclin's Decl. ¶ 9; Pl.'s Aff. ¶ 24.)

On March 26, 1999, Plaintiff filed a Complaint in the United States District Court for the Middle District of Alabama. In her Complaint, Plaintiff alleges (1) that Defendant failed in his duty to notify Plaintiff of her right to appeal her termination to the MSPB and (2) that Defendant failed in his duty to notify Plaintiff of her EEO rights and, therefore, her failure to contact an EEO counselor within 45

days of her termination is excusable and does not preclude her from proceeding with her discrimination claim against Defendant before the Postal Service's EEO Office. (Pl.'s Compl. at 5–8.) Plaintiff requests that the court order the MSPB to accept jurisdiction and proceed with her appeal of her termination and order Defendant's EEO Office to fully process her EEO complaint. In the alternative, Plaintiff asks the court to order Defendant to reinstate her to her former position and award her compensatory damages, back pay, costs, and attorney's fees. (*Id.* at 6–8.)

## DISCUSSION

Defendant argues that he is entitled to summary judgment on each of Plaintiff's claims. According to Defendant, first, Defendant was not required to inform Plaintiff of the procedures to appeal her termination to the MSPB because she did not have a right to appeal her termination to the MSPB. (Def.'s Br. at 15–19.) Second, during Plaintiff's employment with the Postal Service, Defendant informed Plaintiff in various ways of her EEO rights, including the requirement that she contact an EEO counselor within 45 days of her termination if she wanted to file an EEO claim. (*Id.* at 10–15.)

### A. Plaintiff's Alleged Right to Appeal to the MSPB

Defendant first argues that Plaintiff did not have a right to appeal her termination to the MSPB and, therefore, Defendant did not have a duty to inform Plaintiff of the MSPB appeal process. (Def.'s Br. at 15–19.)

When a federal agency makes a personnel decision "on a matter that is appealable to the [MSPB]," it generally has a duty to inform the affected employee of certain information necessary to an appeal. 5 C.F.R. § 1201.21. The MSPB is an administrative tribunal created by Congress to provide an initial review of certain adverse federal personnel actions. *See* 5 U.S.C. §§ 7512, 7513(d). Not all personnel matters affecting Postal Service employees are appealable to the MSPB, however. An employee of the Postal Service may appeal an adverse employment action to the MSPB only if she (1) is a preference eligible, is in the position of a supervisor or a management employee, or is engaged in personnel work in other than a purely nonconfidential clerical capacity and (2) has completed one year of current continuous service in the same or similar positions. *See* 5 U.S.C. § 7511(b)(8).

"Preference eligible" is defined to include a "disabled veteran." 5 U.S.C. § 2108(3)(C). An individual is a "disabled veteran" if she served on active duty in the Armed Forces, has been honorably discharged, and has a service-connected disability. *See* 5 U.S.C. § 2108(2).

In her Affidavit, Plaintiff states that she was honorably discharged from the Armed Forces with a ten percent disability. (Pl.'s Aff. ¶¶ 1, 2.) Defendant has not presented evidence contradicting this testimony. The court finds, therefore, that Plaintiff is a "disabled veteran" and accordingly is "preference eligible." Plaintiff has thus satisfied the first prerequisite to appealing her termination to the MSPB.

Even so, Defendant argues that Plaintiff has not completed one year of current continuous service in the same or similar positions and, therefore, does not satisfy the second prerequisite to appealing her termination to the MSPB. (Def.'s Br. at 16–19.)

Plaintiff was employed by the Postal Service for approximately five months, from November 23, 1996, through April 19, 1997. (*See* Pl.'s Aff. ¶¶ 3, 11.) Therefore, Plaintiff did not complete one year of current continuous service in the same or similar positions. Plaintiff accordingly has not satisfied section 7511(b)(8)'s criteria for appealing her termination to the MSPB.

Although Plaintiff does not make the argument to the court, before the MSPB

Plaintiff argued that she was a VRA and, therefore, was excepted from the one year current continuous service requirement. The court will address that issue.

In an effort to assist veterans in adjusting to civilian life, Congress created VRAs, which are designed to promote employment opportunities in the federal government for certain veterans. *See* 38 U.S.C. §§ 4214(a)(1), 4214(b)(1). Not all veterans are eligible for VRAs, however. A veteran is eligible for a VRA only if she is (1) a veteran of the Vietnam era and (a) has a service-connected disability rated at at least 30 percent or (b)(i) has a service-connected disability rated at less than 30 percent or has served in a campaign for which a campaign badge has been authorized and (ii) received the appointment during the period ending 10 years after the date of the veteran's last discharge or release from active duty or December 31, 1995, whichever is later or (2) a veteran who first became a member of the Armed Forces after May 7, 1975, and was discharged or released from active duty under conditions other than dishonorable and (a) has a service-connected disability rated at at least 30 percent or (b) received the appointment within the ten year period following the later of the date of the veteran's last discharge or release from active duty or December 31, 1989. *See* 38 U.S.C. §§ 4214(b)(2), 4214(b)(3).

The evidence shows that Plaintiff was eligible for a VRA. As discussed, Plaintiff is a veteran. (Pl.'s Aff. ¶ 1.) There is no evidence showing that Plaintiff is a veteran of the Vietnam era or when Plaintiff entered the Armed Forces. Therefore, the court assumes that Plaintiff first became a member of the Armed Forces after May 7, 1975. As a result, Plaintiff cannot satisfy the first avenue for VRA eligibility. Even so, Plaintiff has satisfied the second avenue. Plaintiff states in her Affidavit that she was honorably discharged from the

Armed Forces on or around May 21, 1991, with a ten percent disability. (Pl.'s Aff. ¶¶ 1, 2.) Within ten years of the date of her discharge, on November 23, 1996, Plaintiff began employment with the Postal Service. Therefore, Plaintiff was eligible for a VRA.

■ Plaintiff's eligibility for a VRA does not mean that Plaintiff worked for the Postal Service as a VRA, however. Plaintiff has not presented evidence that she was a VRA to the Postal Service. In fact, the evidence is to the contrary. In her Declaration, Carrie Springer, Human Resources Specialist for the Postal Service's Alabama District, stated that Plaintiff was hired by the Postal Service from a hiring worksheet.[3] (Springer's Decl. ¶ 6a.) Similarly, the Postal Service's official record of Plaintiff's hiring, Plaintiff's PS Form 50, states that Plaintiff was "SELECTED FROM HIRING WORKSHEET" dated October 16, 1996. (*Id.*, Ex. A.) Based on this uncontroverted evidence, the court finds that Plaintiff was not a VRA.

■ Even if Plaintiff were a VRA, however, she still would not have had the right to appeal her termination to the MSPB. A veteran appointed as a VRA and whose employment is terminated within one year after the date of the appointment has limited rights to appeal the termination of her employment to the MSPB. "[A] veteran given a [VRA] whose employment under the appointment is terminated within one year after the date of such appointment shall have the same right to appeal that termination to the [MSPB] as a career or career-conditional employee has during the first year of employment." 38 U.S.C. § 4214(b)(1)(E). A career or career-conditional employee in her first year of employment may appeal her employment termination to the MSPB only if she alleges that the termination (1) was based on partisan political reasons or marital status or (2) was not effected in accordance with the procedural requirements of 5 C.F.R.

---

**3.** A hiring worksheet is a computer-generated list of names of Postal Service applicants, ranked according to their mail handler examination scores, with upward adjustments made for veteran status. *See Matthews v. Runyon*, 860 F.Supp. 1347, 1349 (E.D.Wis.1994).

§ 315.805, pertaining to the termination of probationary employees for conditions arising before their appointments. *See* 5 C.F.R. § 315.806; *Baughman v. Department of the Navy,* 16 F.3d 421 (Fed.Cir. 1993) (unpublished table decision) (citing *Bante v. Merit Sys. Protection Bd.,* 966 F.2d 647, 649 (Fed.Cir.1992)).

Plaintiff has not alleged that her termination was due to partisan political reasons or marital status or violated the procedural requirements of 5 C.F.R. § 315.805. Therefore, even if she were a VRA, Plaintiff would not have had a right to appeal her termination to the MSPB.[4]

Because Defendant's decision to terminate Plaintiff's employment was not appealable to the MSPB, Defendant did not have a duty to inform Plaintiff of the MSPB appeal procedures. Defendant is accordingly entitled to summary judgment on Plaintiff's claim that he failed to inform Plaintiff of her right to appeal her termination to the MSPB.

### B.  Defendant's Alleged Failure to Notify Plaintiff of Her EEO Rights.

Defendant argues that, during Plaintiff's employment with the Postal Service, he informed Plaintiff in various ways of her EEO rights, including the requirement that she contact an EEO counselor within 45 days of the date her employment was terminated in order to preserve an EEO claim. (*See* Def.'s Br. at 10–15.) Therefore, according to Defendant, Plaintiff's

failure to contact an EEO counselor within 45 days of the effective date of her termination required the Postal Service to dismiss her EEO claim.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e–17, protects most federal employees against employment discrimination based on race, color, religion, sex, or national origin. Specifically, the statute provides that "[a]ll personnel actions affecting employees or applicants for employment ... [in federal agencies and other specifically listed areas of federal employment] shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). A covered federal employee who has been subject to unlawful discrimination under Title VII may file a lawsuit in federal district court. *See* 42 U.S.C. §§ 2000e–5(f)(3), 2000e–16(d). Before filing a lawsuit, however, an aggrieved employee must first exhaust her administrative remedies. *See Crawford v. Babbitt,* 148 F.3d 1318, 1321 (11th Cir. 1998) (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)), *vacated on other grounds,* 527 U.S. 1018, 119 S.Ct. 2363, 144 L.Ed.2d 768 (1999).

The regulations governing equal employment opportunities require a federal employee who has been discriminated against in violation to Title VII to first consult an

---

4. Plaintiff alleges, but has not presented evidence to show, that, in terminating her, Defendant failed to adhere to the procedural requirements of 5 C.F.R. § 315.804, pertaining to the termination of probationary employees for unsatisfactory performance or conduct. (*See* Pl.'s Resp. at 9.) Section 315.804 states that when an agency decides to terminate a probationary employee for unsatisfactory performance or conduct it shall notify her in writing of why she is being terminated, the agency's conclusions as to the inadequacies of her performance or conduct, and the effective date of her termination. *See* 5 C.F.R. § 315.804.

The evidence shows that Zellars issued a letter dated March 19, 1997, to Plaintiff stating that she recommended that Plaintiff's employment be terminated because Plaintiff failed to complete the window training program successfully, a requisite condition to qualify for the position of Distribution Window & Markup Clerk. (*See* Springer's Aff., Ex. O.) Similarly, the following month, in a letter dated, April 3, 1997, Ward told Plaintiff that her termination is effective April 19, 1997. (*See id.,* Ex. P.) Therefore, Defendant's termination of Plaintiff satisfied section 315.804. Even if it had not, however, and even if Plaintiff were hired as a VRA, Plaintiff would still be ineligible to appeal her termination to the MSPB. *See* 5 C.F.R. § 315.806.

EEO counselor within the employing agency to try to resolve the matter informally. *See* 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a[n EEO] counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

In the case at bar, Plaintiff first received notice that she would be terminated on March 20, 1997, when Zellars gave Plaintiff a Notice of Proposed Removal. (*See* Pl.'s Aff. ¶ 9; Springer's Decl. ¶ 6v.) Plaintiff's termination became effective the following month, on April 19, 1997. (*See* Pl.'s Aff. ¶ 11.) Plaintiff first contacted an EEO counselor 23 months later, on March 23, 1999. (*See* Pl.'s Aff. ¶ 22; Maclin's Decl. ¶ 4.) Therefore, Plaintiff failed to timely contact an EEO counselor.

An agency will generally dismiss a federal employee's EEO complaint where the employee has failed to contact an EEO counselor within 45 days of the allegedly discriminatory conduct. *See* 29 C.F.R. § 1614.107(b). However, the agency will excuse an employee for failing to timely contact an EEO counselor where one of the following four circumstances exists: (1) the individual shows that he or she was not notified of the time limits and was not otherwise aware of them; (2) he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred; (3) that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits; or (4) for other reasons considered sufficient by the agency. *See* 29 C.F.R. § 1614.105(a)(2).

Plaintiff argues that the first exception excuses her failure to timely contact an EEO counselor. According to Plaintiff, Defendant did not notify her of her EEO rights, including the requirement that she contact an EEO counselor within 45 days of the effective date of her termination. (Pl.'s Resp. at 9.) Plaintiff does not contend that she is excused under either of the other three exceptions.

The Equal Employment Opportunity Commission's regulations provide that the employing agency shall publicize to all employees and post at all times (1) the names, business telephone numbers, and business addresses of the EEO counselors; (2) the time limits and necessity of contacting an EEO counselor before filing a complaint; and (3) the addresses of the EEO Director, EEO Officer(s), and Special Emphasis Program Managers. *See* 29 C.F.R. § 1614.102(b)(6). "Notice by the employer 'is sufficient only if it is reasonably geared to inform an employee that he must see an EEO counselor within 45 days of the alleged discriminatory action.'" *Howell v. Department of the Army*, 975 F.Supp. 1293, 1300 (M.D.Ala.1997) (Thompson, C.J.) (quoting *Jakubiak v. Perry*, 101 F.3d 23, 27 (4th Cir.1996)), *aff'd*, 130 F.3d 445 (11th Cir.1997).

Defendant has presented evidence showing that the Postal Service notified Plaintiff of her EEO rights and otherwise complied with 29 C.F.R. § 1614.102(b)(6) in relation to Plaintiff. In her Declaration, Springer, the custodian of Plaintiff's employment records with the Postal Service, stated that for two days in late November 1996, Plaintiff participated in new employee "Postal Orientation" at the Montgomery Post Office. (Springer's Decl. ¶¶ 2, 6c, 6d.) "Postal Orientation" included 15 Modules, each of which presented a specific topic relevant to employment with the Postal Service. (*Id.* ¶ 6c.) In Module 7, orientation participants, including Plaintiff, heard a lecture and received a workbook describing how they could report allegations of sexual harassment to the Equal Employment Office at the Montgomery Post Office. (*Id.* ¶¶ 6f, 6g.) In Module 10, Plaintiff was informed of her right to access the EEO complaint process. (*Id.* ¶ 6i.) Module 10 identified and described the role of the Post Office's EEO Counselors/Investigators and the 45 day time period during which allegedly aggrieved employees must request EEO counseling. (*Id.*) The follow-

ing provision of Module 10 was read to Plaintiff during orientation:

> The name and phone number of the local/area EEO Counselor/Investigator is posted on official bulletin boards in all postal facilities. The number for this area is [listed the specific telephone number for the Postal Service's Alabama District's EEO Complaints Processing Office in Montgomery]. To begin the pre-complaint process, you must contact the complaints processing office within 45 calendar days of the incident or personnel action you believe to be discriminatory.

(*Id.* 6j.)

Defendant has also presented Zellars' Declaration. In her Declaration, Zellars stated that throughout Plaintiff's employment with the Postal Service "the EEO poster titled 'Equal Employment Opportunity Is The Law—Discrimination Is Prohibited', was clearly posted on the wall of the Hayneville Post Office in plain view for all to read." (Zellars' Decl. ¶ 4.) This poster (1) instructed employees to request EEO counseling within 45 days of the allegedly discriminatory act or, if a personnel action is involved, within 45 days of its effective date; (2) directed employees to contact the Birmingham, Alabama EEO Office and listed its address; (3) informed employees that they could call the Postal Service's EEO Office and provided the telephone number; and (4) provided employees with additional notice and direction on where and how to request EEO counseling and file an EEO complaint. (*See id.*) Zellars also testified that all Hayneville Post Office employees, including Plaintiff, received a pamphlet entitled "Instructions for Filing Informal EEO Complaints," which provided employees with instructions for seeking EEO counseling, including when, where, and how to do so. (*Id.* ¶ 5.) These instructions were also posted on a wall inside the Hayneville Post Office. (*See id.*)

In Response, Plaintiff states the following in her Affidavit: (1) that her "notice of proposed removal never advised me of or placed me on notice of my employment rights involving ... filing a discrimination case through the EEO procedure," (Pl.'s Aff. ¶ 9;) (2) "[t]hat when I was terminated by the Postal Service I had no awareness or any recall of any awareness I may have had earlier as to filing procedures for ... EEO charges," (*id.* ¶ 13;) and (3) that before she retained an attorney in or around June 1998 she otherwise had no knowledge or recollection of EEO procedures. (*Id.* ¶¶ 16, 26.)

■ The regulation places the burden on the claimant to show that she (1) was not notified of the 45 day limit in which to contact an EEO counselor and (2) did not otherwise know of the time limit. *See* 29 C.F.R. § 1614.105(a)(2). The test of whether a claimant is on notice of the time limit is not a subjective one. Instead, "the question is whether the advertisements were reasonably calculated to give notice of the deadlines." *Howell,* 975 F.Supp. at 1300 (citing *Jakubiak,* 101 F.3d at 27). Notice may be constructive, so long as it is reasonably geared to inform the employee of the time limit. *See id.* at 1301. "If the information about filing deadlines is reasonably available, the complainant 'is estopped from asserting ignorance as an excuse for late filing.'" *Id.* (quoting *Myles v. Schlesinger,* 436 F.Supp. 8, 17 (E.D.Pa. 1976)).

■ Defendant's evidence shows that through lectures and handouts the Postal Service directly notified Plaintiff of the 45 day time limit for contacting an EEO counselor, and the other procedures relevant to filing an EEO complaint. In addition, the Postal Service indirectly notified Plaintiff of the same information by way of posters hanging on the walls of the Hayneville Post Office. Plaintiff's testimony does not directly challenge Defendant's evidence that Defendant notified Plaintiff of her EEO rights. Instead, Plaintiff only generally denies that she knew or recalls having known of her EEO rights. In oth-

er words, Plaintiff's testimony shows that she did not subjectively know of or remember her EEO rights but does not contradict Defendant's evidence showing that Defendant notified Plaintiff of her EEO rights. Therefore, the court finds that Plaintiff is estopped from asserting ignorance as an excuse for her extreme tardiness in contacting an EEO counselor. *See id.* (finding unpersuasive the plaintiff's testimony that the Army did not notify him of the requirement to contact an EEO counselor within 45 days of the allegedly discriminatory employment action where the Army's evidence showed that Plaintiff received a handout and worked around posters describing the EEO filing procedures and in his affidavit the plaintiff only generally denied receiving notice of those procedures). Because Plaintiff is without excuse for untimely contacting an EEO counselor, the court finds that Defendant is entitled to summary judgment on Plaintiff's claim that he failed to inform her of her EEO rights.[5]

### CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment be and the same is hereby GRANTED.

A judgment in accordance with this Memorandum Opinion shall be entered separately.

---

**5.** Plaintiff concedes that the court does not have jurisdiction to entertain the merits of her Title VII claim against Defendant because Defendant's EEO Office did not fully process her complaint and, therefore, Plaintiff has not exhausted her administrative remedies. (Pl.'s Comp. ¶ 16.)